USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/9/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------x

SHAHZAD AHMED,

                    Plaintiff,

     – against –

UNITED STATES OF AMERICA,

                    Defendant.

----------------------------------------------x

04 Civ. 1518 (TPG)

**OPINION**

Petitioner Shahzad Ahmed moves pro se under 28 U.S.C. § 2255 to set aside his narcotics conviction. Ahmed claims that the three attorneys who represented him before and during trial were ineffective. Ahmed also moves for summary judgment and for an evidentiary hearing.

Ahmed further moves to amend his motion to vacate under 28 U.S.C. § 2255. Ahmed seeks to add a claim that his sentence violated his Sixth Amendment right to trial by jury because, in imposing sentence, this court relied on facts found to exist by a preponderance of the evidence rather than proven to a jury beyond a reasonable doubt.

The Government opposes all motions.

All of petitioner's motions are denied and the § 2255 proceeding is dismissed.

## Facts

Ahmed was convicted on August 22, 2001, of one count of conspiracy to import heroin and two counts of conspiracy to distribute heroin. On July 15, 2003, the Second Circuit rejected Ahmed's appeal and affirmed his conviction.

### 1. The Proffer Agreement

According to Ahmed's affidavit, his first attorney, Stephen Ascher, came to him in late July 2000 and informed him of a "plea deal from the Government." The details of that proposed agreement are not described. The affidavit goes on to say that Ahmed asked Ascher, if Ahmed made any proffer statements, how they could be used against him if plea negotiations did not work out, to which Ascher responded that the Government would be able to use the statements to impeach his testimony if he went to trial and testified. This is what is asserted in Ahmed's affidavit.

On August 23, 2000, when Ahmed participated in a proffer session with the Government, Ascher accompanied him. At the beginning of the session, Ahmed and Ascher were given a copy of the standard proffer agreement used by the U.S. Attorney's Office for the Southern District of New York. That agreement is eight paragraphs, and a little over a page long, and is written in easily legible text. The agreement states in part that "the Government will not offer in evidence on its case-in-chief . . . any statements made by [Ahmed] at the meeting," but that the Government could use Ahmed's statements for

cross-examination should Ahmed testify and could use such statements "to rebut any evidence or arguments offered by or on behalf of" Ahmed.

Before Ahmed signed the agreement, an Assistant U.S. Attorney, Paul Radvany, made an explanation of the agreement's provisions. The Government contends that it was Radvany's practice to explain to defendants the fact that any statements made during the course of a proffer can be used against a defendant not only to cross-examine him should he testify, but to rebut any arguments or evidence offered by him or on his behalf at trial. Although Radvany and two federal agents who were present at the Ahmed proffer session believe Radvany followed this practice that day, they do not have a specific recollection of this being done.

According to Ahmed's affidavit, neither Ascher nor Ahmed read the agreement before Ahmed signed it. The court notes that in the motion practice prior to the trial of Ahmed's criminal case, his two subsequent lawyers emphasized over and over that Ahmed and/or his attorney did not understand that the rebuttal provision was part of the proffer agreement and that Ahmed's proffer statements could not properly be used by the Government for rebuttal purposes at the trial. However, in his affidavit submitted on the present § 2255 motion, Ahmed makes no specific statement about a lack of understanding of the rebuttal provision in the proffer agreement. All he says is, "At no point did AUSA Radvany or Mr. Ascher, explain to me that the agreement would prevent me from going to trial." Ahmed and his attorney signed the agreement, as did the Assistant United States Attorney.

Ahmed proceeded with the proffer and offered the Government a detailed account of his activities and those of his co-conspirators in importing heroin from Pakistan and distributing it in the United States. The Government declined to offer Ahmed a cooperation agreement, and the case was scheduled for trial.

## 2. Pretrial Motions

During pretrial proceedings, Ascher was replaced by another attorney, Francisco Celedonio, at Ahmed's request. Celedonio filed a motion that asked the court to hold that Ahmed's proffer statements were inadmissible, except to impeach Ahmed if he testified at trial. The motion focused on the rebuttal provision of the agreement, and argued that if the language allowing the Government to use Ahmed's statements "to rebut any evidence or arguments" were interpreted broadly, it could preclude Ahmed from offering any defense whatsoever at trial. Celedonio argued that Ahmed had been misled into believing that his statements could be used only to impeach his testimony at trial, and that Ahmed had not understood that there could be a broader use. However, no affidavits of Ahmed or Ascher giving any direct evidence about Ascher's advice or Ahmed's understanding were presented, although Celedonio stated that Ascher would be willing to testify at a hearing. The court denied the motion, but noted that there might be circumstances under which the court would consider limiting the use of the proffer statements at trial.

After the hearing, Celedonio was replaced by a third attorney, Gail Laser, who moved for reconsideration. Laser's presentation was largely based

on what Ascher had told her, and was somewhat confused as to whether Ascher had or had not fully apprised Ahmed of the provisions of the proffer agreement, including the rebuttal provision.

The court denied the motion for reconsideration. The court noted that there was no evidence that Ahmed himself had not read or understood the agreement, although it was unclear precisely what the attorney Ascher had understood the rebuttal provision to mean. The court commented that it "would be willing to have a hearing and take evidence on" these issues. Laser did not request such a hearing or offer additional evidence. She did not offer any direct evidence from Ahmed or Ascher.

The court stated that the rebuttal provision of the proffer agreement would not be triggered simply by a defense argument that Ahmed was not guilty. Rather, the court suggested that what might trigger the rebuttal provision was "some affirmative assertion of facts that were contrary to" statements made at the proffer session.

### 3. Evidence Adduced at Trial

Ahmed proceeded to trial in August 2001.

The Government contended at trial that Ahmed and his brother had imported large quantities of heroin from Pakistan and then sold it in the United States. The Government's evidence included the testimony of Ahmed's girlfriend, Beth Cherry; an individual who had helped Ahmed to import the heroin, Brijul Kapur; and an individual who had purchased heroin from Ahmed, Christopher Beggs. This testimony established that Ahmed and his

brother had arranged for a supplier in Pakistan to liquefy heroin, absorb it into paper lottery tickets, and ship the tickets to over twenty mailboxes in New York. Ahmed arranged for Kapur and others to pick up the shipments from the mailboxes. Ahmed would then use steam to extract the heroin from the paper tickets. Ahmed also traveled to Pakistan to pick up heroin in person. On one such trip, Cherry accompanied him, and Ahmed transported heroin to the United States by liquefying it and absorbing it into Cherry's clothes. Ahmed would sell the imported heroin. Beggs, for instance, purchased a total of over a kilogram of heroin from Ahmed on about twelve occasions.

The Government introduced into evidence 160 envelopes containing the heroin-soaked lottery tickets, which had been seized from the mailboxes as a result of Government surveillance. The Government also introduced lottery tickets and a bag of heroin that had been seized from Ahmed's home. Ahmed's fingerprints were found on the bag of heroin. Finally, the Government introduced records showing that Ahmed had applied for three of the mailboxes that had received these shipments, and introduced receipts from Ahmed's wallet for additional mailboxes that had been opened in other people's names.

The Government made no use at the trial of any statements made by Ahmed at the proffer session.

Ahmed did not testify at trial and did not introduce any evidence, other than a stipulation as to his brother's height and weight. Ahmed's attorney made various arguments in summation about the deficiencies in the

Government's proof. There is no contention that this summation was inadequate.

Ahmed was convicted by the jury on all three counts. On appeal, the Second Circuit affirmed various rulings of this court, but declined to reach Ahmed's claim that he received ineffective assistance with respect to the proffer agreement, as the Court determined that the record did not provide a sufficient basis to decide that claim. United States v. Ahmed, 67 Fed. App'x 648, 650-51 (2d Cir. 2003).

## Discussion

### 1. Original § 2255 Motion

Ahmed makes three claims of ineffective assistance of counsel, all of which relate to the proffer agreement. Ahmed claims that Ascher failed to adequately explain the proffer agreement, in part because Ascher himself did not fully understand it. Ahmed also claims that both Celedonio and Laser should have introduced live testimony by Ascher and Ahmed regarding their understanding, or lack of understanding, of the agreement.

Under the standard set forth in Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984), a defendant raising a claim of ineffective assistance must show (1) that his attorney's performance "fell below an objective standard of reasonableness" and (2) that prejudice resulted—i.e., "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Before discussing the conduct of the attorneys, one thing should be noted, which is clear beyond question, and that is that Ahmed signed the agreement. By doing so he bound himself to its terms. If he signed without reading the agreement he took the responsibility for so doing. He surely had the opportunity to read it and understand it. There is no claim that he was incapable of understanding the language, and no indication that he was pressured, or rushed, or treated in any way that prevented him from absorbing the full meaning of the agreement.

There is still an issue about whether Ascher's performance was deficient in his discussion of the proffer agreement with his client, Ahmed. The court must say that, if there were a need to have a fully developed record of evidence on this point, such need has not been met. No direct evidence from Ahmed or Ascher comes from the proceedings attending the trial, nor has any such direct evidence been presented on this § 2255 motion, aside from a brief affidavit of Ahmed, quoted earlier. The gap in the evidence might well be filled by the evidentiary hearing which Ahmed now moves for.

However, the taking of additional evidence about Ascher's conduct would serve no useful purpose, because of the overriding circumstance that, even if Ascher's counseling was deficient, there was no prejudice within the meaning of Strickland, as will be discussed shortly.

With regard to the performance of Celedonio and Laser, Ahmed faults them for not introducing direct evidence showing how Ahmed was misinformed about the proffer agreement. Ahmed particularly complains about Laser, who

failed to accept the trial court's invitation to present such evidence at a hearing. However, it may well be that Celedonio and Laser were well advised to limit the presentation of evidence, particularly because of possible problems with Ahmed's credibility. But again there is no need to further develop the issues about the performance of these two attorneys, because even if there were problems with their performance, there was no prejudice.

On the issue of prejudice, the main point to be made is that no statement made by Ahmed at the proffer session was used in any way at the trial for purposes of rebuttal or for any other purpose. Nor is there any claim that Ahmed's trial attorney failed to make some argument or put on evidence because of concern about the possible use of the proffer statements.

However, Ahmed does attempt to assert prejudice. And he does so with respect to one lawyer at a time. He starts with Ascher, and the claim is contained at page 9 of his Memorandum of Law, as follows:

> But for counsel Ascher's "deficient" performance, the outcome of this case would have without a doubt been different. That is, defendant would have accepted the government's first plea offer and pled guilty, rather than stood trial.

As described earlier, Ahmed's affidavit on the present motion states that Ascher came to him and informed him of a "plea deal from the Government." Apparently after that there was a discussion of a proffer which might lead to a plea agreement. According to Ahmed, Ascher then told him that, if plea negotiations did not work out, the Government could only use proffer statements for cross-examination if Ahmed testified at the trial.

Ahmed made the proffer with highly damaging admissions. But no cooperation or plea agreement was offered him by the Government and Ahmed went to trial.

It is now necessary to deal with the argument that, but for Ascher's deficient performance in advising Ahmed about the proffer agreement, Ahmed would have accepted the Government's first plea offer and pled guilty rather than standing trial. It is certainly possible that a defendant in a criminal case might be offered a favorable plea agreement by the Government, and that such offer might be withdrawn after highly damaging admissions are made in a proffer. However, in the present case Ahmed has offered no evidence or details about such a circumstance, and has not made such an argument.

There is no evidence of what that "first plea offer" was or why Ahmed did not take it, if that indeed happened. The only thing the record suggests is that Ahmed declined the first plea offer because he sought to enter into a cooperation agreement, and to make a proffer toward that end. Whatever Ascher did or did not do about advising Ahmed about the contents of the proffer agreement, there is nothing to indicate that this had anything to do with Ahmed's desire to obtain a cooperation agreement, or his failure to obtain one. It should also be noted that in the various pretrial proceedings, no suggestion was ever made that the proffer or anything done by his former lawyer interfered with his receiving the benefit of a plea offer. Nothing was said to the court in the pretrial proceedings indicating that Ahmed had previously desired to plead or presently desired to plead. On the contrary, the whole weight of the

argument about the proffer agreement, and Ascher's possible misconduct, was an attempt to protect Ahmed from the use of the rebuttal provision during the trial, which Ahmed wished to engage in. And, of course, the rebuttal provision never came into play at that trial.

At page 17 of Ahmed's Memorandum of Law he makes his claim of prejudice with regard to Celedonio. He argues that he has met the test of Strickland, since, if further evidence had been presented by Celedonio, there is a reasonable probability that the result of the "proceeding" would have been different. His reference to "proceeding" is not to the trial but merely to Celedonio's application to limit the use of the proffer statements. A similar claim of prejudice with respect to Laser is set forth at page 24 of Ahmed's Memorandum of Law.

It is surely true that prior to the trial the judge denied the applications of Celedonio and Laser and declined to prohibit the application of the proffer agreement's rebuttal clause. However, the real question as to prejudice is not about the denial of those pretrial applications. It is about whether the denial of those applications prejudiced Ahmed at the ultimate trial of the criminal case. There was, in fact, no prejudice in this regard. Despite the fact that the trial judge did not foreclose the use of proffer statements for rebuttal, they were not used.

The court concludes that there was no prejudice from alleged deficiencies of the three lawyers, or any one of them.

**2. Motion to Amend**

In a motion filed on February 25, 2005, Ahmed seeks to amend his § 2255 motion to vacate so as to include a claim that his sentence violated his Sixth Amendment right to trial by jury because, in imposing sentence, this court relied on facts found to exist by a preponderance of the evidence rather than proven to a jury beyond a reasonable doubt. In support of this argument, Ahmed cites United States v. Booker, 543 U.S. 220 (2005) and Blakely v. Washington, 542 U.S. 296 (2004).

As to petitioner's motion to amend, there are two issues before the court. (1) Whether the proposed amendment is timely; and (2) Whether the amended claim succeeds on the merits.

Ahmed's Proposed Amendment Is Time-Barred

Under 28 U.S.C. § 2255(f), a one-year period of limitation applies to motions under this section. According to the docket in the original criminal case, 99 Cr. 395, the Second Circuit rejected Ahmed's appeal and affirmed his conviction on July 15, 2003. He filed his § 2255 motion on February 23, 2004, well within the one-year period. However, his motion to amend, filed on February 25, 2005, came after the one-year limitation period.

Fed. R. Civ. P. 15(c) governs the timeliness of a motion to amend submitted after § 2255's statute of limitations has expired. See Ching v. United States, 298 F.3d 174, 181 (2d Cir. 2002). Under Rule 15(c), an amendment is timely if it "relates back" to the original pleading. An amendment relates back to the date of the original pleading when the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or

attempted to be set out—in the original pleading . . . ." Fed. R. Civ. P. 15(c)(1)(B). As the Supreme Court recently noted, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." Mayle v. Felix, 545 U.S. 644, 659 (2005).

Ahmed's proposed amendment does not "relate back" to his original petition because the two claims do not share a common core of operative facts. Instead, Ahmed's proposed amendment makes a specific attack on the sentence on an entirely new ground.

Accordingly, because Ahmed's proposed amendment was filed more than one year after his conviction became final and does not relate back to his original petition, the amendment is dismissed as untimely.

### Even if Ahmed's Amendment Were Timely, It Would Fail on the Merits

The holding of Booker is not retroactive to sentences that were final as of January 12, 2005. See Guzman v. United States, 404 F.3d 139, 144 (2d Cir. 2005). In Guzman, the Second Circuit held that, because the Booker decision did not establish a "watershed rule of procedure," as required for retroactive applicability, Booker "does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that Booker issued." Id. Here, Ahmed's sentence was affirmed on appeal and thus became final on July 15, 2003, well before January 12, 2005.

Booker therefore does not apply in Ahmed's case. The amendment is without merit.

- 13 -

## Conclusion

Ahmed's original § 2255 motion is without merit and is denied. His motions for summary judgment and for an evidentiary hearing are denied.

Ahmed's amended § 2255 motion is time-barred, and in any event is without merit. It is denied.

Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith.

SO ORDERED.

Dated: New York, New York
October 8, 2009

Thomas P. Griesa
U.S.D.J.